```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
```

| | | |
|---|---|---|
| **AMERICAN COMMERCIAL LINES, LLC** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-4466** |
| | * | |
| **D.R.D. TOWING COMPANY, LLC** | * | **SECTION "B"(4)** |

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiff American Commercial Lines LLC's ("ACL") Motion for Partial Summary Judgment. (Rec. Doc. No. 38). For the reasons pronounced below,

**IT IS ORDERED** that ACL's Motion for Partial Summary Judgment (Rec. Doc. No. 38) be and is hereby **DENIED.**

I. *Cause of Action and Facts of Case*

This case arises from the collision of the tug MEL OLIVER while operating under an amendment (Rec. Doc. No. 38-4) to both an August 6, 2007 Master Bareboat Charter (Rec. Doc. No. 38-2) and an August 6, 2007 Master Fully Found Charter (Rec. Doc. No. 38-3) between DRD Towing Company, LLC ("DRD") and ACL.  In the early morning of July 23, 2008, ACL's Barge DM-932 collided with the M/V TINTOMARA while being pushed by the MEL OLIVER, resulting in an oil spill of some 300,000 gallons of fuel oil. (Rec. Doc. No. 38-5 at 8-9).  A criminal investigation regarding the operations of DRD resulted in a guilty plea by DRD and a finding that the captain of the M/V MEL OLIVER left the boat and turned over operation and control to a "steersman," licensed only to steer a vessel with a

1

properly licensed captain or mate standing watch with him in the wheelhouse. (Rec. Doc. No. 38-5 at 8). For the three days, from July 20 to July 23, 2008, the steersman was the only operator onboard the MEL OLIVER, which required him to work 36 hours straight; it was during this time that the collision occurred, on July 23, 2008. *Id.*

ACL now moves for Partial Summary Judgment, asking this Court to find that both the charter agreements that ACL entered into with DRD were void *ab initio*. (Rec. Doc. No. 38).

Movant contends that the charter agreements should be declared void *ab initio* as a result of DRD's fraudulent misrepresentation and their intent to violate material terms of the agreements. (Rec. Doc. No 38-1 at 9). Specifically, ACL argues that DRD violated clause 7 of both charter agreements, (Rec. Doc. Nos. 38-2 at 4-5; 38-3 at 3-4, respectively) entitled "Compliance with Laws and Regulations," which mandates DRD to be in compliance with all laws in the manning and operation of the tugs. Also, movant states that DRD violated the "Performance Standards" clause of the Fully Found Charter, which requires DRD to insure that the tugs are manned by properly trained and licensed personnel. (Rec. Doc. No. 38-3 at 12). Movant further contends that DRD signed the charter agreements knowing full and well that its performance would be illegal, thus rendering the charters and their amendment void. (Rec. Doc. No. 38-1 at 12.)

2

Additionally, Movant asserts that the Court should disregard the declaration and amended deceleration of Daniel Dantin, Jr., being that the declarations contradict the admissions contained in the Factual Basis (Rec. Doc. No. 38-5) in DRD's prior criminal proceeding and that DRD is judicially/collaterally estopped from taking a position that is factually contrary to the position that it took in the criminal proceeding.[1]  (Rec. Doc. No. 60 at 3).

Respondent, DRD contends that there existed no intent to defraud at the time the charters were executed and that the suit does not make sufficient allegations of fraud, as pled (Rec. Doc. No. 47 at 2-3).  Defendant also asserts that there is no factual contradiction between the statements made in Daniel Dantin's declaration in the instant case and the factual basis that he signed as part of DRD's guilty plea in the related criminal proceeding.  (Rec. Doc. No. 63 at 1).  If ACL is able to sever contractual privity with DRD, ACL would be able to pursue a claim with the National Pollution Fund Center for the clean up expenses that it paid.  (Rec. Doc. No. 47 at 1).  Currently, ACL is in privity of contract with the party that caused the oil spill (DRD), preventing them from recouping expenses from the fund.  *Id.* at 2.

## II. *Law and Analysis*

A.   <u>Summary Judgment Standard</u>

---

[1] The factual basis from the related prior criminal proceeding may be found in *U.S. v. DRD Towing Company, LLC,* 10-191 at Rec. Doc. No. 17. Plaintiff has attached a copy in the instant case at Rec. Doc. No. 38-5.

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.   <u>Fraudulent Misrepresentation and Intent to Violate Contracts:</u>

The standard for voiding a contract under maritime law sets fourth five requirements:

(1) the deceiving party made a material misrepresentation or nondisclosure;
(2) the representation was false or the nondisclosure implied that the facts were different from what the deceived party understood them to be;
(3) the deceiving party knew that the representation was false or that the nondisclosure implied the

>      existence of false facts;
> (4) the deceiving party intended the deceived party to rely on the misrepresentation or nondisclosure; and
> (5) the deceived party detrimentally relied upon the misrepresentation or nondisclosure.

*Black Gold Marine Inc. v. Jackson Marine Co., Inc.,* 759 F.2d 466, 470 (5th Cir. 1985).

Clause 7 of both charter agreements is entitled "Compliance with Laws and Regulations", where DRD agreed to comply with all applicable laws and regulations with respect to the manning and operation of the chartered tugs or any substitute. (Rec. Doc. Nos. 38-2 at 4-5; 38-3 at 3-4).  Elements (3) and (4) of the *Black Gold Marine* test require ACL to prove that DRD knew that its statements in the contract were false, and that DRD intended to deceive ACL in making those representations.  In Dantin's amended declaration, he states:

> . . . there were times between January 1, 2007 and July 23, 2008 when vessels operated by DRD were not fully manned by properly licensed individuals and that these situations could have been prevented by DRD . . . however, at the time I signed the agreements referenced above, there was no belief on my part or to my knowledge on the part of DRD as a legal entity that the representations made in the charters regarding proper manning of the tugs with the sufficient number of properly licensed individuals would be breached by DRD . . . [and] there was no intent on my part or on the part of DRD to deceive ACL by representing that DRD would comply with manning requirements when DRD intended not to comply with those regulations.

(Rec. Doc. No 49-3 at 2).  This seems to preclude summary judgment showing a genuine issue of fact regarding whether Dantin and DRD intended to deceive ACL.  (Rec. Doc. No 49-3).  However, movant

5

contends that DRD is estopped from using the affidavit to create an issue of fact as the affidavit contradicts prior statements Dantin made to this Court. *See Modica,* 518 F.2d at 376-77. (Rec. Doc. No. 60 at 7). In the factual basis for the criminal plea approved and signed by Dantin on behalf of DRD, it was admitted that "[O]n or about July 15, 2008, the MV MEL OLIVER, a DRD 'trip boat' that operated 24 hours a day with live-aboard crew, began a designated run with its designated barge from St. Rose, Louisiana to Port Bienville, Mississippi." (Rec. Doc. No. 38-5 at 7). At item 11 in Dantin's amended declaration, he states that it was his understanding that the vessel was on a dedicated run that did not require it to operate more than 12 hours in a given 24 hour period. (Rec. Doc. No. 49-3 at 2). Movant contends that this is a "critical assertion" in the Dantin declaration that is demonstrably false in comparison to the criminal plea that Dantin signed on behalf of DRD, and that the Court is entitled to reject the rest of the content of the declaration, even though not actually proven to be false under *S.A.F. (XXX-XX-XXXX) v. U.S. Com'r Social Sec. Admin,* 2010 WL 2977048, at 4 (W.D. La. July 26, 2010). (Rec. Doc. No. 60 at 8). However, movant fails to address item 13 of Dantin's affidavit, where he states that he was unaware that the vessel was working more than 12 hours in a 24 hour period at the time of the oil spill, thereby clearing up any inconsistencies. (Rec. Doc. No. 49-3 at 3).

Dantin was under the mistaken impression that the vessel was operating less than 12 hours a day; and, since then, he has learned that it was actually working more than 12 hours a day.  This is not an inconsistency.  Furthermore, movant fails to demonstrate how this allegedly inconsistent statement by Dantin amounts to a "critical assertion" in relation to DRD's opposition to the motion.  DRD's opposition centers on whether Dantin, on behalf of DRD, intended to comply with the manning requirements contained in the charter agreements at the time of their execution, in relation to the third and forth requirements of the *Black Gold Marine* test.  Being that Dantin's affidavit states that there was no intent to deceive ACL, along with the determination that DRD is not estopped from setting forth that affidavit, ACL has failed their burden of proof under the third and forth requirements of the *Black Gold Marine* test.  There exists a material issue of fact with respect to knowledge of any illegality of the contract.  Thus, summary judgment is precluded; the Court need not address the remaining factors.

New Orleans, Louisiana, this 7TH day of 2011.

_____
UNITED STATES DISTRICT JUDGE